UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Iovate Health Sciences, Inc. et al.,

                        Plaintiffs,           **Hon. Hugh B. Scott**

                                            08CV809A

                                            **Report &**
                    v.                   **Recommendation**

Matthew Masuda t/a Millennium Sport
Technologies, et al.

                        Defendants.

Before the Court are the following motions: defendants' motion to dismiss based upon a lack of personal jurisdiction (Docket No. 10) and plaintiffs' motion to conduct jurisdictional discovery (Docket No. 19).

**Background**

The plaintiffs, Iovate Health Sciences, Inc., Iovate T&P Inc., Multi Formulations, Ltd, and New Nitro Formulations, Ltd. (referred to collectively as "Iovate") brought this action alleging infringement of the following patents: United States Patant Nos. 5,973,199 entitled "Hydrosoluble Organic Salts of Creatine" (the "199 Patent"); 5,968,900 entitled Increasing Creatine and Clycogen Concentration in Muscle" (the "900 Patent"); 6,277,396 entitled Dietary Supplement Containing a Thermongenic Substance and an Adrenal Support Substance" (the

1

"396 Patent"), 5,719,119 entitled "Parenteral Nutrition Therapy with Amino Acids" (the "119 Patent"), 6,814, 986 entitled Composition for Treating Obesity and Esthetic Treatment Process" (the "986 Patent"), 6, 830,765 entitled "Green Tea Extract for Treating Obesity" (the "765 Patent"), 6,475,530 entitled "Methods and Compositions for Producing Weight Loss" (the "530 Patent"), 5, 817,329 entitled "Nutritional Supplement for Increased Muscle Size and Strength for Body Builders" (the "329 Patent"), 6,136,339 entitled "Food Supplements and Methods Comprising Lipoic Acid and Creatine"  (the "339 Patent"), and 6,620,425 entitled "Food Supplements and Methods Comprising Lipoic Acid and Creatine" (the "425 Patent") (Docket No. 5 at ¶¶15-35).

The plaintiffs are all corporations organized and existing under the laws of Ontario, Canada. Named as defendants are Matthew Masuda, trading as Millennium Sport Technologies ("Millennium")(referred to collectively as "Masuda"), Timothy J. Blankenship,[1] and five "John Does."  Masuda, who resides in Chewelah, Washington, seeks dismissal of the Amended Complaint based upon a lack or personal jurisdiction, or in the alternative, a transfer of venue to the United States District Court for the Eastern District of Washington. (Docket No. 10-7 at page 3).

## Discussion

**Jurisdiction**

The defendants claim that Masuda and Millennium have no presence in New York. The plaintiffs allege that jurisdiction exists over defendant Masuda inasmuch as Masuda conducts

---

[1]  The action was voluntarily dismissed as against Blankenship. (Docket No. 22)

business within the Western District of New York, that Masuda advertises and markets goods within the district, and that Masuda's conduct outside the district caused injury within the district. (Docket No. 5 at ¶ 13). Masuda states that he operates Millennium as a sole proprietorship registered in Chewelah, Washington. (Docket No. 10-3 at ¶ 4); that all his business activities are conducted from his home in Chewelah (Docket No. 10-3 at ¶ 5); that he distributes Millennium brand supplements to health food stores and wholesale distributors (Docket No. 10-3 at ¶ 6); that none of his accounts are located in New York and that to his knowledge no retail outlet sells Millennium products in New York (Docket No. 10-3 at ¶ 7); that he is not registered to do business, owns no property or bank accounts in New York, and has no agents in New York (Docket No. 10-3 at ¶¶ 8-11). He also states that he conducts no advertising in New York and that his website is not directed at New Yorkers. (Docket No. 10-3 at ¶¶ 15-16).

The plaintiff asserts that Masuda and Millennium conduct business in New York both through the Millennium website and in that Millennium products are available at retail stores within the Western District of New York. In support of this contention, the plaintiff has submitted the affidavit of Taylan K. Sen, Esq., an associate at Phillips Lytle LLP (counsel for plaintiff) stating that on January 6, 2009, she purchased three Millennium products at The Vitamin Shoppe located at 1250 Niagara Falls Boulevard, Tonawanda New York (Docket No. 28 at ¶ 3); on January 8, 2009, she purchased Millennium products from The Vitamin Shoppe located at 1775 Walden Avenue, Cheektowaga, New York (Docket No. 28 at ¶ 4); and on February 6, 2009, she purchased Millennium products at The Vitamin Shoppe located at 3240 Monroe Avenue in Rochester New York (Docket No. 28 at ¶ 7). Further, on February 9, 2009, Sen states that she accessed Millennium's website from her office in Buffalo, New York and

found that Millennium offered several products for sale to persons located in this district. (Docket No. 28 at ¶ 8-10).[2]

Masuda responds that he is not responsible for the sale of Millennium products in New York because he sells to wholesale distributors who are free to sell his products "in such outlets as they choose." (Docket No. 25 at ¶ 9). Thus, he contends that purchases of Millennium products from the various The Vitamin Shoppe stores in New York do not constitute "a purchase from me." (Docket No. 25 at ¶ 11). According to Masuda, The Vitamin Shoppe issues its purchase orders to Masuda from New Jersey and Masuda ships Millennium products to The Vitamin Shoppe in New Jersey. (Docket No. 25 at ¶ 15).

The question before the Court is whether Masuda conducts business within New York even though he is not physically located within New York. Section 302(a)(1) of the New York State Civil Practice Law and Rules ("CPLR") provides that jurisdiction may be had over parties who are not "present" in New York under §301 where certain conditions are met. Under §302(a), so called "long-arm" jurisdiction exists as follows:

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of

---

[2] The record also reflects that Chatherine Berchou, who is alleged by the defendants to be the wife of Michael Berchou, Esq., counsel for the plaintiffs, made an internet purchase of Millennium products by way of the Millennium website. Masuda contends that this order was distinctive in that he does not "receive many website orders," this was one of the largest orders ever received, and it was from New York. (Docket No. 10-3 at ¶¶ 18-19).

> action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>>
>> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> 4. owns, uses or possesses any real property situated within the state.

"When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir.1999). Where, as here, a court relies on pleadings and affidavits, rather than conducting a "full-blown evidentiary hearing," the plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant. Id. (quoting Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir.1981)). The Court must construe the pleadings and affidavits in the light most favorable to the plaintiff, resolving all doubts in the plaintiff's favor. CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir.1986); Distefano v. Carozzi North America, Inc., 286 F.3d 81 (2nd Cir. 2001).

In the instant case, Iovate contends that jurisdiction may be obtained over Masuda in New York on the grounds that he is transacting business within the state pursuant to §302(a)(1) and because he has committed a tortious act outside New York causing injury inside New York

5

pursuant to §302(a)(3).

With respect to §302(a)(1) jurisdiction, the plaintiffs contend that jurisdiction may be obtained over the defendants based upon the Masuda's placement of Millennium products in the stream of commerce resulting in retail sales in New York. Although Masuda may not exert *control* over where his customers distribute Millennium products, the fact that a distributor sells products to a retailer who does business in New York may be sufficient to exercise jurisdiction over the out-of-state distributor. Violet v. Picillo, 613 F.Supp. 1563, 1576) (D.R.I.1985) (Interstate distributors and manufacturers place their products into the stream of commerce with either the subjective intention, or objective reason to know, that their products will be sold to a nationwide market, that is, in any or all states. The fact that these manufacturers or distributors place their products in a stream of commerce destined for sale through a broad interstate market, and reap the attendant benefits, renders them properly subject to suit in one of the states comprising that market.); City of New York v. A-1 Jewelry & Pawn, Inc., 247 F.R.D. 296, 334 (E.D.N.Y.,2007)(same); Air-Flo M.G. Co. Inc., v. Louis Berkman Co., 933 F.Supp. 229, 232 (W.D.N.Y. 1992)(same). Here, Masuda denies either the subjective intention or the objective reason to know that any of his customers were selling Millennium products within New York. Under New York law, to show that an alleged agent's acts are attributable to the defendant, a "plaintiff need not establish a formal agency relationship." Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L., 264 F.3d 32, 36 (2d Cir.2001) (citation omitted). He must, however, show that the purported agent "engaged in purposeful activities in New York in relation to his transaction for the benefit of and with the knowledge and consent" of the defendant, and that the defendant "exercised some control over [the agent] in the matter." Id. (citation omitted).

See also Papadopoulos v. Tenet Good Samaritan Inc., 2008 WL 4452345 (S.D.N.Y. 2008). With respect to whether jurisdiction exits over Masuda pursuant to §302(a)(1), discovery is warranted as to the volume of sales of Millennium products in New York and Masuda's knowledge of such sales in New York.[3]

Jurisdiction pursuant to §302(a)(1) may also be obtained over an individual who transacts business within New York via the internet. In Citigroup Inc. v. City Holding Co., 97 F.Supp.2d 549 (S.D.N.Y.2000), the Court found that the various uses of an internet web site fall within three basic categories along a spectrum. At one end of the spectrum are the uses of the internet where the "defendant makes information available on what is essentially a 'passive' web site" and the defendant's use of the web site is akin to taking out an advertisement in a newspaper with national circulation. Id. at 565. The use of a passive web site traditionally did not create personal jurisdiction over a defendant under § 302(a)(1). Id. (collecting cases). The other end of the spectrum are those cases where the defendant "clearly does business over the internet, and where it knowingly and repeatedly transmits computer files to customers in other states ." Id. This category can be the basis for specific jurisdiction under § 302(a)(1) for a claim arising from that business activity. The third category of internet activity that the Court identified was a "middle category" on the spectrum where "the defendant maintains an interactive web site which permits the exchange of information between users in another state and the defendant." Id . The existence of jurisdiction in this middle category of cases depends on the nature and the frequency of

---

[3] If jurisdiction did not otherwise attach, it would be appropriate to deny the instant motion to dismiss without prejudice to allow for jurisdictional discovery on this issue. The record lacks information regarding the volume of sales of Millennium products in New York by The Vitamin Shoppe; and whether other retailers also sell Millenium products in New York.

7

activity of the defendant. Realuyo v. Villa Abrille, 2003 WL 21537754, *6 (S.D.N.Y.,2003). Generally, an interactive website supports a finding of personal jurisdiction over a defendant. Hsin Ten Enter. USA, Inc. v. Clark Enter., 138 F.Supp. 2d 449, 456 (S.D.N.Y. 2000). Again, however, the record in this case regarding the defendants internet business is not fully developed. Among other things, the record is not developed as to the volume of Millennium internet sales in New York.

Similar questions exist as to whether jurisdiction attaches to Masuda pursuant to §302(a)(3). Under that provision, a non-domiciliary who commits a tortious act outside of New York, causing an injury to a person or property within New York, if the non-domiciliary "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. The alleged infringement by Masuda arguably caused an injury in New York, as the impairment of the value of Iovate's copyright could cause it to lose business opportunities in New York. It is well-settled that in cases of injury caused by infringement of intellectual property, the intellectual property owner suffers injury where the infringement occurs. Light v. Taylor, 317 Fed.Appx. 82 (2d. Cir. 2009) citing Sung Hwan Co. v. Rite Aid Corp., 7 N.Y.3d 78, 85, (2006) (noting that under New York law, "a tortious act committed out of state that was likely to cause injury through loss of business in state was sufficient to satisfy personal jurisdiction"); Tri-Costal Design Group, Inc. v. Merestone Merch., Inc ., 2006 WL 1167864, at *4 (S.D.N.Y. 2006)(same); Art Leather Mfg. Co., Inc. v. Albumx Corp., 888 F.Supp. 565, 568 (S.D.N.Y.1995)(same); Penguin Group (USA) Inc. v. American Buddha, 2009 WL 1069158, *2 (S.D.N.Y.,2009)(same). In Light, the Second Circuit held that jurisdiction did not exist because, in that case, the plaintiff could not demonstrate that the

defendant derived substantial revenue from interstate commerce, but instead could only show that the defendant "sold $1500 worth of merchandise online over five years." Light, 317 Fed. Appx. at 84. In the instant case, Masuda has acknowledged that he distributes "various Millennium products to approximately 70 accounts in multiple states" and that Millennium products are "further distributed by some of [his] account customers to over 400 retail outlets." (Docket No. 10-3 at ¶ 7).[4] Thus, the plaintiffs argue that Masuda derives substantial revenue from this interstate commerce. (Docket No. 20 at page 11). The defendants responding papers do not dispute this assertion. Notwithstanding, analysis under §302(a)(3)(ii) requires finding some form of "purposeful affiliation" with New York on the part of the defendant. As noted in Tri-Coastal Design Group, Inc. v. Merestone Merchandise, Inc., 2006 WL 1167864 (S.D.N.Y. 2006), "[s]everal New York Appellate Division cases illustrate the 'purposeful affiliation' factor as it relates to fact patterns, such as here, that involve a foreign defendant which sells goods to an out-of-state distributor who in turn introduces the goods into New York." Tri-Coastal, 2006 WL 1167864 at *5 (internal citations omitted). Masuda has denied knowledge that Millennium products were being sold in New York. Discovery as to this issue is warranted.

Upon construing the pleadings and affidavits in the light most favorable to the plaintiff, and resolving all doubts in the plaintiffs' favor as the Court must, even if the Court were to find that either §302(a)(1) or §302(a)(3) were satisfied, the Court would still have to determine whether jurisdiction over Masuda comports with federal due process. In this regard, even if

---

[4] In this sworn declaration, Masuda states that none of the retail outlets are located in New York. (Docket No. 10-3 at ¶ 7). In light of the Sen Affidavit (Docket No. 18 at ¶¶ 3-7), it appears that this statement is false. In a subsequent declaration, Masuda does not dispute that the Millennium products were sold in New York, but states that he has no control over where his customers ultimately retail the Millennium products. (Docket No. 25 at ¶11).

9

jurisdiction is appropriate under the laws of the forum state, "the court must decide whether such exercise comports with the requisites of due process." Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir.2001). Under the Due Process Clause of the United States Constitution, an inquiry regarding personal jurisdiction has two parts, the minimum contacts inquiry and a reasonableness inquiry. Porina v. Marward Shipping Co., 521 F.3d 122, 127 (2d Cir.2008). The necessary minimum contacts may exist through either specific or general jurisdiction. "Specific jurisdiction exists where a forum exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum ." Porina, 521 F.3d. at 128. To find specific jurisdiction, the Court must determine that "the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (citation omitted). A defendant's conduct and connection with the forum must be such "that he should reasonably anticipate being haled into court there." Burger King Corp., 471 U.S. at 474. "A court's general jurisdiction over a non-resident ... is based on a defendant's general business contacts with the forum, and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." Porina, 521 F.3d at 128. See also Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L., 264 F.3d 32, 37 (2d. Cir. 2001)(Although the Court properly found §302(a)(1) satisfied, district court erred in failing to perform a federal due process analysis). Again, inasmuch as Masuda has denied any intention or knowledge that Millennium products were being sold in retail stores in New York, discovery is also warranted as to Masuda's contacts with New York.

**Concluson**

It is recommended that the motion to dismiss be denied without prejudice and that plaintiffs' motion for jurisdictional discovery be granted. The defendants' motion to change venue should also be denied without prejudice pending resolution of the jurisdictional question.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v.

Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District Court's refusal to consider the objection.**

So Ordered.

*/s/ Hugh B. Scott*
United States Magistrate Judge
Western District of New York

Buffalo, New York
August 11, 2009